Adam M. Apton (SBN 316506)
**LEVI & KORSINSKY, LLP**
1160 Battery Street, East Suite 100
San Francisco, CA 1671
Tel: (415) 373-2420
Email: aapton@zlk.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LILY FITZGERALD, IAN CROWLEY, ANTONIO MINICHIELLO, ALICIA FREEMAN, ANNABELLE REGAN, NICHOLAS MCDONALD, MICHAEL AMENTI, CALEB BRACKNEY, ABIGAIL ROSKIND, JORDAN LETURGEZ, and ANNABELLE CRUZ, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PAYPAL, INC. and PAYPAL HOLDINGS, INC., <br><br> Defendants. | **CASE NO.:** <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Lily Fitzgerald, Ian Crowley, Antonio Minichiello, Alicia Freeman, Annabelle Regan, Nicholas McDonald, Michael Amenti, Caleb Brackney, Abigail Roskind, Jordan Leturgez, and Annabelle Cruz, (herein "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, brings this Class Action Complaint against PayPal, Inc. and PayPal Holdings, Inc. (collectively, "PayPal" or "Defendants"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to each Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1.      Developed by Honey Science Corporation, Honey is a free browser extension offered to online consumers that purports to comb the Internet for coupons that can be applied to online purchases or confirm that the price the consumer sees is the best price available.

2.      On January 6, 2020, PayPal Holdings, Inc. announced that it acquired Honey Science Corporation for $4 billion—PayPal's largest acquisition to date. PayPal took full control of operations shortly thereafter and rebranded the browser extension as "PayPal Honey" in 2022.

3.      Recent estimates have found that Honey is installed on more than 20 million Google Chrome web browsers alone, making it the twelfth most popular extension for the Chrome browser.[1]

4.      Honey's purported ability to quickly price check before purchases makes the browser extension appealing to consumers looking for a discount on a product they are already interested in purchasing and have already added to their online shopping cart.

5.      According to recent reports,[2] however, Honey withholds promo codes from consumers and/or misrepresents to consumers that inferior codes are providing them with the best deal.

6.      PayPal falsely advertised that its Honey browser extension would help consumers "score the lowest price."

7.      Honey's deceptive business practices benefit PayPal to the detriment of consumers in that Honey's misrepresentations induce consumers to make purchases on which PayPal earns a commission.

8.      Plaintiffs accordingly bring this consumer class action individually and on behalf of all other members of the defined Classes, seeking damages and injunctive relief to end PayPal's harmful practices and to compensate for the harm already caused.

---

[1] Matt Zeunert, *Chrome Extension Statistics: Data from 2024*, DEBUGBEAR (Aug. 29, 2024), https://www.debugbear.com/blog/chrome-extension-statistics (last visited Apr. 1, 2025).
[2] MegaLag, *Exposing The Honey Influencer Scam*, YOUTUBE (Dec. 21, 2024), https://www.youtube.com/watch?v=vc4yL3YTwWk (last visited Apr. 1, 2025).

**JURISDICTION AND VENUE**

9.      This Court has original jurisdiction over all causes of action herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because there are more than 100 members in the proposed Classes, Defendants are citizens of a different state than at least one member of the proposed Class, and the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs.

10.     This Court has personal jurisdiction over Defendants because: (1) Defendants are each a citizen of, and have their principal place of business in the state of California; (2) Defendants are authorized to do business and in fact regularly conduct and transact business in the state of California; and/or (3) the claims alleged herein took place primarily in California, where Defendants managed the operation of the Honey browser extension.

11.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 Defendants are each a citizen of and maintain their principal place of business in this District.

**PARTIES**

12.     Plaintiff Lily Fitzgerald is a resident of New Rochelle, New York, and has been a Honey user since 2019. Plaintiff Fitzgerald used the Honey browser extension to find discount codes for her online purchases and/or to earn rewards through PayPal's rewards program when making purchases on Staples and Uber Eats, to name a few. Plaintiff Fitzgerald believed that Honey was finding her the best discount codes to save her money.

13.     Plaintiff Ian Crowley is a resident of Howell, Michigan, and has been a Honey user since 2019. Plaintiff Crowley used the Honey browser extension to find discount codes for his online purchases and/or to earn rewards through PayPal's rewards program when making purchases on Adidas, Urban Outfitters, and Kohl's, to name a few. Plaintiff Crowley believed that Honey was finding him the best discount codes to save him money.

14.     Plaintiff Antonio Minichiello is a resident of Williamsburg, Virginia, and has been a Honey user since 2023. Plaintiff Minichiello used the Honey browser extension to find discount codes for his online purchases and/or to earn rewards through PayPal's rewards program when

making purchases on car rental sites, for example. Plaintiff Minichiello believed that Honey was finding him the best discount codes to save him money.

15.    Plaintiff Alicia Freeman is a resident of Vallejo, California, and has been a Honey user since January 2023. Plaintiff Freeman used the Honey browser extension to find discount codes for her online purchases and/or to earn rewards through PayPal's rewards program when making purchases on Fashion Nova, 123Print, and Peacock TV, to name a few. Plaintiff Freeman believed that Honey was finding her the best discount codes to save her money.

16.    Plaintiff Annabelle Regan is a resident of Tuscaloosa, Alabama, and has been a Honey user since 2022. Plaintiff Regan used the Honey browser extension to find discount codes for her online purchases and/or to earn rewards through PayPal's rewards program when making purchases on Sephora, Bed Bath & Beyond, and ULTA, to name a few. Plaintiff Regan believed that Honey was finding her the best discount codes to save her money.

17.    Plaintiff Nicholas McDonald is a resident of Spencer, West Virginia, and has been a Honey user since 2024. Plaintiff McDonald used the Honey browser extension to find discount codes for his online purchases and/or to earn rewards through PayPal's rewards program when making purchases on Walmart, the Home Depot, and Amazon, to name a few. Plaintiff McDonald believed that Honey was finding him the best discount codes to save him money.

18.    Plaintiff Michael Amenti is a resident of Barrington, New Hampshire, and has been a Honey user since 2016. Plaintiff Amenti used the Honey browser extension to find discount codes for his online purchases and/or to earn rewards through PayPal's rewards program when making purchases on Avis, Walgreens, Lowe's, and Domino's, to name a few. Plaintiff Amenti believed that Honey was finding him the best discount codes to save him money.

19.    Plaintiff Caleb Brackney is a resident of Lakewood, Colorado, and has been a Honey user from 2021 until 2024. Plaintiff Brackney used the Honey browser extension to find discount codes for his online purchases and/or to earn rewards through PayPal's rewards program when making online purchases, including for coffee from Death Wish Coffee. Plaintiff Brackney believed that Honey was finding him the best discount codes to save him money.

20.     Plaintiff Abigail Roskind is a resident of Washington, D.C., and has been a Honey user since 2015. Plaintiff Roskind used the Honey browser extension to find discount codes for her online purchases and/or to earn rewards through PayPal's rewards program when making purchases on Target, Victoria's Secret, and Shopbop, to name a few. Plaintiff Roskind believed that Honey was finding her the best discount codes to save her money.

21.     Plaintiff Jordan Leturgez is a resident of Fort Wayne, Indiana, and has been a Honey user from 2017 until 2021. Plaintiff Leturgez used the Honey browser extension to find discount codes for his online purchases and/or to earn rewards through PayPal's rewards program when making online purchases, mostly on Amazon. Plaintiff Leturgez believed that Honey was finding him the best discount codes to save him money.

22.     Plaintiff Annabelle Cruz is a resident of Tampa, Florida, and has been a Honey user since approximately 2020. Plaintiff Cruz used the Honey browser extension to find discount codes for her online purchases and/or to earn rewards through PayPal's rewards program when making purchases on Shein, Amazon, Ulta, Petco, and Walmart, to name a few. Plaintiff Cruz believed that Honey was finding her the best discount codes to save her money.

23.     Defendant PayPal Holdings, Inc. is a Delaware corporation and holds all assets and liabilities of Defendant PayPal, Inc., a subsidiary Delaware corporation. The two entities are collectively referred to as "PayPal." PayPal is headquartered at 2211 North First Street, San Jose, California 95131.

24.     In addition to operating its own platform, PayPal owns and operates Honey Science Corporation, which originally developed the Honey browser extension. The term "PayPal" in this Complaint, unless otherwise noted, encompasses Honey.

## FACTUAL BACKGROUND

### A. The Honey Browser Extension

25.     The Honey browser extension is an add-on compatible with nearly every major web browser. Adding it to a web browser is simple: by way of example, a Google Chrome user need only click "Add to Chrome" and the extension will be added:



*Figure 1 – Google Chrome Web Store page for Honey*

26.    Once added, Honey becomes an "extension" of the browser, meaning it can add or change information for the user—e.g., install cookies or so-called "tracking tags" on the website.

27.    When a user shops online, the Honey extension will automatically search for and apply coupons.

28.    When a user navigates to their online shopping cart, a Honey pop-up will appear, prompting the user to apply any coupons that Honey finds.



*Figure 2 – Honey Pop-Up on Sample Online Shopping Cart*

6
CLASS ACTION COMPLAINT

29.    Running a sample checkout at Princess Polly (https://us.princesspolly.com/), Honey applies the code "HONEY66151," giving the consumer a discount of $10.00. Honey tells the consumer that it has "applied the best code."



*Figure 3 – Resulting Discount from Honey*

30.    Running a quick Google search for "Princess Polly coupon code," however, RetailMeNot (https://www.retailmenot.com/), provides the code "JULIA20."



*Figure 4 – Coupon code from Google search for "Princess Polly coupon code"*

*31.* Using the RetailMeNot code "JULIA20," the consumer receives $20.00 off their purchase—a better deal than that of Honey's.



*Figure 5 – Resulting Discount from RetailMeNot*

**B. Honey's Misrepresentations**

32. Honey misrepresents its ability to find the "best available coupon codes" for consumers like Plaintiffs and Class Members.

33. Honey's website currently represents that it will find users "the Internet's best discount codes" by searching for coupon codes on "30,000+ sites."[3]

---

[3] *Join Honey*, PAYPAL HONEY, https://www.joinhoney.com/ (last visited Apr. 1, 2025).



*Figure 6 – Honey's representation on the Join Honey website*

34.     Contrary to its representations to consumers, however, a recent exposé revealed that Honey's scheme prioritizes coupon codes from Honey's partner merchants that exist elsewhere in the marketplace and, in some cases, excludes non-partner coupons from its searches.[4]

35.     As a result of this false and misleading advertising, consumers who use Honey often receive inferior discounts, or no discounts at all, while Honey and its merchant partners profit.

36.     Consumers are also disincentivized from searching for coupon codes on their own, as they are led to believe that Honey's coupon code search is comprehensive.

[4] MegaLag, *supra,* n.2.

*Figure 7 – Honey's representations that consumers need not find coupon codes on their own*

37.    In 2020, Honey was investigated by the Better Business Bureau National Advertising Division (NAD) for claiming it could find "every working code on the internet."[5]

38.    The NAD found that Honey's express claim that "[w]ith just a single click, Honey will find every working code on the internet and apply the best one to your cart" implied the following:

39.    Without exception, Honey offers its users access to every single working promo code that is available on the internet, including codes offered on an exclusive basis by RetailMeNot.com or other online businesses; and

40.    Because Honey provides users with access to every working promo code on the internet, consumers need never look elsewhere to find separate, relevant codes.[6]

41.    Honey informed the NAD that, prior to the opening of the NAD's inquiry, it was in the process of discontinuing the express and implied claims brought in this challenge for business reasons.[7]

42.    Honey agreed to permanently discontinue the challenged claims. The NAD, relying on those representations, did not review the claims against Honey on the merits.[8]

43.    However, those statements are currently still on Honey's website. *See Figures 6 and 7.*

44.    Honey's business model prioritizes maximizing profits for itself and its merchant partners while misleading millions of users about the actual value and effectiveness of its services.

45.    But for Defendants' material misrepresentations, false statements, and/or omissions detailed herein, Plaintiffs would not have used Honey or would have searched for additional discount codes or coupons on their own. As a result, Plaintiffs suffered economic loss.

---

[5] *Honey Science LLC Discontinuing Claims for Online Coupon Code Aggregation Service as NAD Began Inquiry*, BBB NATIONAL PROGRAMS (July 21, 2020), https://bbbprograms.org/media/newsroom/decisions/nad-honey-science-coupon-claims (last visited Apr. 1, 2025).
[6] *Id.*
[7] *Id.*
[8] *Id.*

## CLASS ACTION ALLEGATIONS

46.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of the following proposed Class and Subclass (collectively referred to hereinafter as the "Classes"):

**Nationwide Class ("Class"):** All persons within the United States who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

**California Subclass:** All persons within the state of California who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

**New York Subclass:** All persons within the state of New York who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

**Michigan Subclass:** All persons within the state of Michigan who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

**Virginia Subclass:** All persons within the state of Virginia who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

**Alabama Subclass:** All persons within the state of Alabama who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

**West Virginia Subclass:** All persons within the state of West Virginia who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

**New Hampshire Subclass:** All persons within the state of New Hampshire who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

**Colorado Subclass:** All persons within the state of Colorado who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

**D.C. Subclass:** All persons within the District of Columbia who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

**Indiana Subclass:** All persons within the state of Indiana who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

**Florida Subclass:** All persons within the state of Florida who downloaded the Honey browser extension onto their browsers and used the Honey browser extension when completing an online purchase.

47. Specifically excluded from the Classes are PayPal, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by PayPal, and their heirs, successors, assigns, or other persons or entities related to or affiliated with PayPal and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

48. Plaintiffs reserve the right to amend the Class and Subclass definitions above if further investigation and/or discovery reveals that such definitions should be expanded, narrowed, divided into further subclasses, or otherwise modified in any way.

49. The Classes satisfy the requirements of Federal Rules 23(a): numerosity, commonality, typicality, and adequacy.

50. **Numerosity**. The members of the Classes are so numerous that joinder of all members is impracticable. While the precise number of members in each of the Classes is presently unknown, PayPal advertises that Honey is trusted by more than 17 million members.

51. **Commonality**. Common questions of law and fact exist as to all members of the Classes. The common factual and legal questions include, but are not limited to, the following:

    a. Whether PayPal owes legal duties to Classes, and breached and continues to breach those duties;

    b. Whether PayPal breached and continues to breach its covenant of good faith and fair dealing with members of the Classes;

    c. Whether PayPal's misconduct alleged herein caused and continues to cause harm to members of the Classes;

    d. Whether Class Members are entitled to injunctive and declaratory relief, including without limitation, the Proposed Injunctive Relief to prevent future harm; and

    e. Whether Subclass Members are entitled to damages and/or disgorgement of unjustly earned profits as a result of PayPal's misconduct.

52. **Typicality**. Plaintiffs' claims are typical of the claims of the other members of the Classes in that the claims of Plaintiffs and other members of the Classes are reasonably co-extensive and arise from the same course of wrongful conduct by PayPal.

53. **Adequacy of representation**.  Plaintiffs will fairly and adequately protect the interests of the members of the Classes.  Plaintiffs have retained counsel highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action. Further, Plaintiffs have no interests that are antagonistic to those of the other members of the Classes.

54.    The Class satisfies the requirements of Rule 23(b)(2) because PayPal has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and injunctive relief with respect to Class Members as a whole.

55.    The Subclass also satisfies the requirements of Federal Rules 23(b)(3): predominance and superiority.

56.    **Predominance**. The common issues identified above will predominate over any questions affecting only individual Subclass Members. In particular, PayPal's liability will be determined by reference to the Terms of Service, as well as other common evidence in the form of PayPal's internal records, including internal studies, financial records, and databases storing information concerning the display of every coupon code to every user, including the date of display, the identity of the user, the identity of the retailer, and the amount paid by the retailer to PayPal for the coupon code.

57.    **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Subclass Members is relatively small compared to the burden and expense that would be involved in individual litigation of their claims against PayPal.  It would, thus, be virtually impossible for the Subclass Members, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive

supervision by a single United States District Court, and presents no unusual management difficulties under the circumstances presented in this case.

58.    Alternatively, at a minimum, particular common issues are appropriate for class treatment under Rule 23(c)(4).

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and All Class Members)

59.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

60.    Plaintiffs bring this claim individually and on behalf of the Class Members against Defendants.

61.    Substantial benefits have been conferred on Defendants by Plaintiffs and members of the Class through the referral fees and commission payments that were credited to PayPal through the Honey browser extension function, which wrongfully represented that the consumers had the best price.

62.    Defendants either knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the commission on sales emanated from Plaintiffs' and Class Members respective affiliated marketing links. As such it would be inequitable for Defendants to retain the benefit of the commission under these circumstances.

63.    Defendants were obligated to disclose the presence of the best deals and prices to the consumers because:

a.    Defendants had exclusive knowledge of the presence of the Honey browser extension on PayPal, which wrongfully deprived Plaintiffs and Class Members of the discount codes and PayPal benefitted from this through the referral fees and commission payments that were credited to it; and

b.    Defendants actively concealed and wrongfully represented that the Consumers had the best price.

64.    Defendants' acceptance and retention of the benefits of the commission payments and referral fees from Plaintiffs' and the Class under the circumstances alleged herein make it inequitable and unjust for Defendants to retain the profits and benefits for their wrongful conduct, which should be restored to Plaintiffs and Class Members.

65.    Plaintiffs and Class Members are entitled to recover from Defendants all the amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

66.    Plaintiffs and Class Members seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**COUNT II**
**CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. §§ 17200 *et seq.***
**(On Behalf of Plaintiff Freeman and California Subclass Members)**

67.    Plaintiff Freeman incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

68.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

69.    Plaintiff Freeman, California Subclass Members, and Defendants are each a "person" under California Business & Professions Code § 17201.

70.    **Fraudulent.** Defendants' failure to disclose the best deals and prices to Plaintiff Freeman's and California Subclass Members (which wrongfully deprived Plaintiffs and Class Members of the discount codes) is likely to deceive the public.

71.    **Unlawful.** As alleged herein, Defendants' failure to disclose the best deals and prices violates at least the following laws:

      a.    The CLRA, California Business & Professions Code §§1750, et seq.; and

      b.    The False Advertising Law, California Business & Professions Code §§ 17500, *et seq.*

72.    **Unfair.** Defendants committed unfair practices by their business acts and practices which interfered with the prospective economic advantage of consumers, which wrongfully deprived them of discounts and best prices.

73. Defendants' wrongful conduct with respect to their practices relating to the collection of referral fees and commission payments, violated California's public policy against interfering with another's prospective economic advantage.

74. Defendants' conduct with respect to their practices is unscrupulous, offensive, and substantially injurious to the consumers and the utility of Defendants' conduct, if any, does not outweigh the gravity of the harm to its victims.

75. Defendants were obligated to disclose the best deals and prices available to the consumers and the discount codes because:

76. Defendants had exclusive knowledge of the presence of the Honey browser extension on PayPal, which deprived the consumers of the best prices and discounts; and

77. Defendants actively concealed the best prices and discounts from Plaintiff Freeman and California Subclass Members.

78. Plaintiff Freeman and California Subclass Members relied upon the pricing provided to them by Defendants when making their purchasing decisions. Had Plaintiff Freeman and California Subclass Members known Defendants failed to disclose the best prices and discount codes, they would not have used the Honey browser extension.

79. In accordance with California Business & Professions Code §17203, Plaintiff Freeman seeks an order enjoining Defendants from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.

80. Defendants' conduct is ongoing and continuing, and there is no indication that PayPal will cease such activity in the future, such that prospective injunctive relief is necessary, especially given Plaintiff Freeman's desire to use Defendants' Honey browser extension in the future if they can be assured that they are offered the best prices and there is no concealment of discounts.

81. Additionally, Plaintiff Freeman seeks restitution if monetary damages are not available. Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiff Freeman and the California Subclass. Unlike

damages, the Court's discretion in fashioning equitable relief is broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

82.     On behalf of herself and the California Subclass, Plaintiff Freeman also seeks an order for the restitution of all monies from the concealment of discount codes and unlawful collection through referral fees and commission payments, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition, including reasonable attorneys' fees and costs of suit.

**COUNT III**
**CALIFORNIA FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. § 17500 *et seq.***
**(On Behalf of Plaintiff Freeman and California Subclass Members)**

83.     Plaintiff Freeman incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

84.     Plaintiff Freeman brings this claim individually and on behalf of the California Subclass Members against Defendants.

85.     California's False Advertising Law prohibits any statement or omission in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

86.     As set forth herein, Defendants' failure to disclose the presence of better deals and discount codes to the consumers is likely to deceive the public.

87.     Defendants knew, or reasonably should have known, that these omissions were misleading to reasonable consumers.

88.     Had Defendants disclosed the presence of best prices and deals (by way of the Terms) or made consumers aware of its failure to disclose, Plaintiff Freeman and members of the California Subclass would not have used the Honey browser extension.

89.     Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff Freeman's desire to continue using the Honey browser extension in the future if they can be assured that the extension works as advertised.

# COUNT IV
## CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### Cal. Bus. & Prof. §§ 1750 *et seq.*
**(On Behalf of Plaintiff Freeman and California Subclass Members)**

90.    Plaintiff Freeman incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

91.    Plaintiff Freeman brings this claim individually and on behalf of the California Subclass Members against Defendants.

92.    Plaintiff Freeman and each proposed Class member are "consumers," as that term is defined in California Civil Code § 1761(d).

93.    Plaintiff Freeman, the Class Members, and Defendants are each a "person" as that term is defined in California Civil Code § 1761(c). Plaintiff Freeman and each of the Class Members' use of the Honey browser extension constitute "transactions" as that term is defined in California Civil Code § 1761(c).

94.    Defendants' conduct alleged herein violates at least the following provisions of California's Consumers Legal Remedies Act (the "CLRA"):

95.    California Civil Code § 1770(a)(5), by failing to disclose better deals and prices;

96.    California Civil Code §1770(a)(7), by knowingly, recklessly, and/or intentionally representing that these were best deals available, when they were not; and

97.    California Civil Code §1770(a)(9), by knowingly, recklessly, and/or intentionally advertising the extension with intent not to work as advertised.

98.    The omissions were material as reasonable consumers such as Plaintiff Freeman and the members of the California Subclass would deem the availability of discount codes important in determining whether to make purchases.

**COUNT V**
**NEW YORK GENERAL BUSINESS LAW § 350**
**(On Behalf of Plaintiff Fitzgerald and New York Subclass Members)**

99.    Plaintiff Fitzgerald incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

100.    Plaintiff Fitzgerald brings this count on behalf of herself and all members of the New York Subclass.

101.    New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce or in the furnishing of any service.

102.    Pursuant to Section 350-A, false advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

103.    Based on the foregoing, Defendants engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

104.    Defendants' false, misleading, and deceptive representations and omissions of fact about Defendants' Honey browser extension's ability to find the best prices were and are directed towards consumers.

105.    Defendants' false, misleading, and deceptive representations and omissions were material and are likely to mislead a reasonable consumer acting reasonably under the customary or usual circumstances.

106.    Defendants' false, misleading, and deceptive representations and omissions have resulted in consumer injury or harm to the public interest.

107.    As a result of Defendants' false, misleading, and deceptive statements and representations of fact, and omissions, Plaintiff Fitzgerald has suffered and continues to suffer economic injury.

108.    As a result of Defendants' violations, Plaintiff Fitzgerald and members of the New York Subclass have suffered damages because: (a) they would not have installed and used the Honey browser extension, or would have searched for additional discount codes or coupons on

their own; and (b) the Honey browser extension does not stand true to the expressed claims on its platform.

109.    Plaintiff Fitzgerald seeks to recover actual damages or five hundred dollars, whichever is greater for each violation, three times actual damages, and reasonable attorneys' fees.

**COUNT VI**
**MICHIGAN CONSUMER PROTECTION ACT**
**Mich. Comp. Laws Ann. §§ 445.903 *et seq.***
**(On Behalf of Plaintiff Crowley and Michigan Subclass Members)**

110.    Plaintiff Crowley incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

111.    Defendants advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.902(g) through the offer, promotion, and/or distribution of the Honey browser extension.

112.    Defendants engaged in unfair, unconscionable, and deceptive practices in the conduct of trade and commerce, in violation of Mich. Comp. Laws Ann. § 445.903(1), including:

a.    Representing that the Honey browser extension has characteristics, uses, and benefits that it does not have;

b.    Representing that the Honey browser extension is of a particular standard or quality if it is of another;

c.    Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;

d.    Making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;

e.    Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive matter.

113.    Defendants' unfair, unconscionable, and deceptive practices include:

a. Misrepresenting that it would provide the best deals to consumers and provide genuine value to its consumers;

b. Unconscionably, falsely, or deceptively inducing consumers into believing they are receiving the best deals available on the internet by using the Honey browser extension when, in reality, they often are not; and

c. Prioritizing discount codes from partner merchants over better deals existing in the market, resulting in consumers receiving either inferior discounts or no discounts at all, directly harming Plaintiff Crowley and other Michigan Subclass Members.

114. Defendants' representations and omissions are material because they are likely to deceive reasonable consumers about the ability of the Honey browser extension to find consumers the best prices.

115. Defendants intended to mislead Plaintiff Crowley and Michigan Subclass Members and induce them to rely on their misrepresentations and omissions.

116. Defendants acted intentionally, knowingly, and maliciously to violate Michigan's Consumer Protection Act, and recklessly disregarded Plaintiff Crowley's and Michigan Subclass Members' rights.

117. As a direct and proximate result of Defendants' unfair, unconscionable, and deceptive practices, Plaintiff Crowley has suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to monies they otherwise would have saved by using other methods to search for, and find, better coupon codes, which allowed Defendants to profit at the expense of Plaintiff Crowley and members of the Michigan Subclass.

118. Plaintiff Crowley seeks all monetary and non-monetary relief allowed by law, including the greater of actual damages or $250, injunctive relief, and any other relief that is just and proper.

**COUNT VII**
**VIRGINIA CONSUMER PROTECTION ACT**
**Va. Code Ann. §§ 59.1-196 *et seq.***
**(On Behalf of Plaintiff Minichiello and Virginia Subclass Members)**

119.    Plaintiff Minichiello incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

120.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

121.    Defendants are each a "person" as defined by Va. Code Ann. § 59.1-198.

122.    Defendants are each a "supplier," as defined by Va. Code Ann. § 59.1-198.

123.    Defendants engaged in the complained-of conduct in connection with "consumer transactions" with regard to "goods" and "services," as defined by Va. Code Ann. § 59.1-198.

124.    Defendants advertised, offered, or sold goods or services used primarily for personal, family, or household purposes.

125.    Defendants engaged in deceptive acts and practices by using deception, fraud, false pretense, false promise, and misrepresentation in connection with consumer transactions, including:

      a.    Misrepresenting that it would provide the best deals to consumers and provide genuine value to its consumers;

      b.    Unconscionably, falsely, or deceptively inducing consumers into believing they are receiving the best deals available on the internet by using the Honey browser extension when, in reality, they often are not; and

      c.    Prioritizing discount codes from partner merchants over better deals existing in the market, resulting in consumers receiving either inferior discounts or no discounts at all, directly harming Plaintiff Minichiello and other Virginia Subclass Members.

126.    Defendants intended to mislead Plaintiff Minichiello and Virginia Subclass Members and induce them to rely on their misrepresentations and omissions.

127.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff Minichiello, about the Honey browser extension's ability to find the best prices and best coupons.

128.   Had Defendants disclosed to Plaintiff Minichiello their unlawful representations and omissions relating to the Honey browser extension, Plaintiff Minichiello would not have installed the Honey browser extension or would have searched for coupon codes on his own.

129.   Defendants had a duty to disclose these facts due to the circumstances of this case, and the generally accepted professional standards. Such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiff Minichiello, and Defendants, because consumers placed trust and confidence in Defendants to save them money as they advertised. Defendants' duty to disclose also arose from its:

     a.   Possession of exclusive knowledge of consumers regarding the Honey browser extension;

     b.   Active concealment of Defendants' practice of prioritizing partner merchants' codes; and/or

     c.   Incomplete representations about how Defendants programmed the Honey browser extension to work.

130.   The above-described deceptive acts and practices also violated the following provisions of VA Code § 59.1-200(A):

     a.   Misrepresenting that goods or services have certain characteristics, uses, or benefits;

     b.   Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model;

     c.   Advertising goods or services with intent not to sell them as advertised, or with intent not to sell them upon the terms advertised; and

     d.   Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction.

131.    Defendants acted intentionally, knowingly, and maliciously to violate Virginia's Consumer Protection Act, and recklessly disregarded Plaintiff Minichiello's and Virginia Subclass Members' rights. An award of punitive damages would serve to punish Defendants for their wrongdoing and warn or deter others from engaging in similar conduct.

132.    As a direct and proximate result of Defendants' deceptive acts or practices, Plaintiff Minichiello has suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to monies they otherwise would have saved by using other methods to search for, and find, better coupon codes, which allowed Defendants to profit at the expense of Plaintiff Minichiello and members of the Virginia Subclass.

133.    Defendants' violations present a continuing risk to Plaintiff Minichiello, as well as to the general public.

134.    Plaintiff Minichiello seeks all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation; restitution, injunctive relief; punitive damages; and attorneys' fees and costs.

## COUNT VIII
### ALABAMA DECEPTIVE TRADE PRACTICES ACT
### Ala. Code §§ 8-19-1, *et seq.*
### (On Behalf of Plaintiff Regan and Alabama Subclass Members)

135.    Plaintiff Regan incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

136.    Defendants are each a "person" as defined by Ala. Code § 8-19-3(10).

137.    Plaintiff Regan is a "consumer" as defined by Ala. Code § 8-19-3(4).

138.    Defendants advertised, offered, or sold goods or services in Alabama, and engaged in trade or commerce directly or indirectly affecting the people of Alabama.

139.    Defendants engaged in deceptive acts and practices in the conduct of trade or commerce, in violation of the Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5, including:

     a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have;

     b. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

     c. Advertising goods or services with intent not to sell them as advertised; and

     d. Engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce.

140.    Defendants' deceptive acts and practices include:

     a. Misrepresenting that it would provide the best deals to consumers and provide genuine value to its consumers;

     b. Unconscionably, falsely, or deceptively inducing consumers into believing they are receiving the best deals available on the internet by using the Honey browser extension when, in reality, they often are not; and

     c. Prioritizing discount codes from partner merchants over better deals existing in the market, resulting in consumers receiving either inferior discounts or no discounts at all, directly harming Plaintiff Regan and other Alabama Subclass Members.

141.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the ability of the Honey browser extension to find consumers the best prices.

142.    Defendants intended to mislead Plaintiff Regan and Alabama Subclass Members and induce them to rely on their misrepresentations and omissions.

143.    Had Defendants disclosed to Plaintiff Regan and Alabama Subclass Members the true nature of the Honey browser extension's adequacy, Defendants would have been unable to continue their business and/or would have been forced to operate the Honey browser extension according to its representations.

144.    Plaintiff Regan and Alabama Subclass Members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

145.    Defendants acted intentionally, knowingly, and maliciously to violate the Alabama Deceptive Trade Practices Act, and recklessly disregarded Plaintiff Regan's rights. As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff Regan has suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to monies she otherwise would have saved by using other methods to search for, and find, better coupon codes, which allowed Defendants to profit at the expense of Plaintiff Regan and members of the Alabama Subclass.

146.    Defendants' deceptive acts and practices caused substantial injury to Plaintiff Regan and Alabama Subclass Members, which they could not reasonably avoid, and which outweighed any benefits to consumers or to competition.

147.    Plaintiff Regan seeks all monetary and non-monetary relief allowed by law, including, pursuant to § 8-19-10(a), the greater of (1) actual damages or (2) statutory damages of $100; treble damages; injunctive relief; attorneys' fees, costs, and any other relief that is just and proper.

## COUNT IX
### WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT
#### W. Va. Code §§ 46A-1-102, *et seq.*
#### (On Behalf of Plaintiff McDonald and West Virginia Subclass Members)

148.    Plaintiff McDonald incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

149.    Plaintiff McDonald is a "consumer," as defined by W. Va. Code § 46A-6-102(2).

150.    Defendants engaged in "consumer transactions," as defined by W. Va. Code § 46A- 6-102(2).

151.    Defendants advertised, offered, or sold goods or services in West Virginia and engaged in trade or commerce directly or indirectly affecting the people of West Virginia, as defined by W. Va. Code § 46A-6-102(6).

152.    Defendants engaged in unfair and deceptive business acts and practices in the conduct of trade or commerce, in violation of W. Va. Code § 46A-6-104, including:

a.  Misrepresenting that it would provide the best deals to consumers and provide genuine value to consumers;

b.  Unconscionably, falsely, or deceptively inducing consumers into believing they did not need to independently search for coupon codes because the Honey browser extension was finding them the best deals; and

c.  Omitting, suppressing, and concealing the material fact that they prioritize discount codes from partner merchants over better deals existing in the market, resulting in consumers receiving either inferior discounts or no discounts at all, directly harming Plaintiff McDonald and West Virginia Subclass Members.

153.  Defendants' unfair and deceptive acts and practices also violated W. Va. Code § 46A-6-102(7), including:

a.  Representing that goods or services have approval, characteristics, uses, or benefits that they do not have;

b.  Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another;

c.  Advertising goods or services with intent not to sell them as advertised;

d.  Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

e.  Using deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of goods or services, whether or not any person has in fact been misled, deceived or damaged thereby; and

f.  Advertising, displaying, publishing, distributing, or causing to be advertised, displayed, published, or distributed in any manner, statements and representations with regard to the sale of goods or the extension of consumer credit, which are false, misleading or deceptive or which omit to state material information which is necessary to make the statements therein not false, misleading or deceptive.

154.    Defendants' unfair and deceptive acts and practices were unreasonable when weighed against the need to develop or preserve business, and were injurious to the public interest, under W. Va. Code § 46A-6-101.

155.    Defendants' acts and practices were additionally "unfair" under W. Va. Code § 46A-6-104 because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

156.    The injury to consumers from Defendants' conduct was and is substantial because it was non-trivial and non-speculative. The injury to consumers was substantial not only because it inflicted harm on a significant and unprecedented number of consumers, but also because it inflicted a significant amount of harm on each consumer.

157.    Consumers could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the inadequacy of the Honey browser extension and Defendants' prioritization of partner merchants' codes, Defendants created an asymmetry of information between them and consumers that precluded consumers from taking action to avoid or mitigate injury.

158.    Defendants' acts and practices had no countervailing benefit to consumers or to competition.

159.    Defendants' acts and practices were additionally "deceptive" under W. Va. Code § 46A-6-104 because Defendants made representations or omissions of material facts that misled or were likely to mislead reasonable consumers, including Plaintiff McDonald and West Virginia Subclass Members.

160.    Defendants intended to mislead Plaintiff McDonald and West Virginia Subclass Members and induce them to rely on their misrepresentations and omissions.

161.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the Honey browser extension's ability to find the best prices and best coupons.

162.    Had Defendants disclosed to Plaintiff McDonald their unlawful representations and omissions relating to the Honey browser extension, Plaintiff McDonald would not have installed the Honey browser extension or would have searched for coupon codes on his own.    Accordingly, Plaintiff McDonald acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which he could not have discovered.

163.    Defendants had a duty to disclose these facts due to the circumstances of this case, and the generally accepted professional standards. Such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiff McDonald, and Defendants, because consumers placed trust and confidence in Defendants to save them money as they advertised, and placed trust and confidence in Defendants. Defendants' duty to disclose also arose from its:

      a.    Possession of exclusive knowledge of consumers regarding the Honey browser extension;

      b.    Active concealment of Defendants' practice of prioritizing partner merchants' codes; and/or

      c.    Incomplete representations about how Defendants programmed the Honey browser extension to work.

164.    Defendants' omissions were legally presumed to be equivalent to active misrepresentations because Defendants intentionally prevented Plaintiff McDonald and West Virginia Subclass Members from discovering the truth regarding the Honey browser extension's ability to find consumers the best prices and Defendants' prioritization of partner merchants' discount codes.

165.    Defendants acted intentionally, knowingly, and maliciously to violate West Virginia's Consumer Credit and Protection Act, and recklessly disregarded Plaintiff McDonald's and West Virginia Subclass Members' rights. Defendants' unfair and deceptive acts and practices were likely to cause serious harm.

166.    As a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff McDonald and West Virginia Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-

monetary damages, as described herein, including but not limited to fraud and restitution to Plaintiff McDonald and West Virginia Subclass Members to recover all monies which were acquired through Defendants' acts of fraudulent, unfair or unlawful competition.

167.     Defendants' violations present a continuing risk to Plaintiff McDonald, as well as to the general public.

168.     Plaintiff McDonald seeks all monetary and non-monetary relief allowed by law, including the greater of actual damages or $200 per violation under W. Va. Code § 46A-6-106(a); restitution, injunctive and other equitable relief; punitive damages, and reasonable attorneys' fees and costs.

**COUNT X**
**NEW HAMPSHIRE CONSUMER PROTECTION ACT**
**N.H. Rev. Stat. §§ 358-A-:1, *et seq.***
**(On Behalf of Plaintiff Amenti and New Hampshire Subclass Members)**

169.     Plaintiff Amenti incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

170.     Defendants are each a "person" under the New Hampshire Consumer Protection Act.

171.     Defendants advertised, offered, or sold goods or services in New Hampshire and engaged in trade or commerce directly or indirectly affecting the people of New Hampshire, as defined by N.H. Rev. Stat. § 358-A:1.

172.     Defendants engaged in unfair and deceptive acts or practices in the ordinary conduct of its trade or business, in violation of N.H. Rev. Stat. § 358-A:2, including:

   a.   Representing that their goods or services have approval, characteristics, uses, or benefits that they do not have;

   b.   Representing that their goods or services are of a particular standard or quality if they are of another; and

   c.   Advertising their goods or services with intent not to sell them as advertised.

173.     Defendants' unfair and deceptive acts and practices include:

a.  Misrepresenting that they would provide the best deals to consumers and provide genuine value to consumers;

b.  Unconscionably, falsely, or deceptively inducing consumers into believing they did not need to independently search for coupon codes because the Honey browser extension was finding them the best deals; and

c.  Omitting the material fact that they prioritize discount codes from partner merchants over better deals existing in the market, resulting in consumers receiving either inferior discounts or no discounts at all, directly harming Plaintiff Amenti and New Hampshire Subclass Members.

174.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the Honey browser extension's ability to find consumers the best prices and best deals.

175.   Defendants acted intentionally, knowingly, and maliciously to violate New Hampshire's Consumer Protection Act, and recklessly disregarded Plaintiff Amenti's rights. The NAD's investigation of Defendants' representations relating to the Honey browser extension put Defendants on notice that their representations are likely to deceive consumers.

176.   As a direct and proximate result of Defendants' deceptive acts or practices, Plaintiff Amenti has suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, which includes, but is not limited to restitution to Plaintiff Amenti and New Hampshire Subclass Members to recover all monies which were acquired through Defendants' acts of fraudulent, unfair or unlawful competition.

177.   Plaintiff Amenti and the New Hampshire Subclass seek all monetary and non-monetary relief allowed by law, including actual damages; statutory damages in the amount of $1,000 per violation if the conduct is found to be willful or, in the alternative, $500 per violation; restitution, injunctive relief; punitive damages; and attorneys' fees and costs.

1

## COUNT XI
## COLORADO CONSUMER PROTECTION ACT
### Colo. Rev. Stat. §§ 6-1-716, *et seq.*
### (On Behalf of Plaintiff Brackney and Colorado Subclass Members)

178.    Plaintiff Brackney incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

179.    Defendants are each a "person" as defined by Colo. Rev. Stat. § 6-1-102(6).

180.    Defendants engaged in "sales" as defined by Colo. Rev. Stat. § 6-1-102(10).

181.    Plaintiff Brackney, as well as the Colorado Subclass, are actual consumers of the products and services offered by Defendants.

182.    Defendants engaged in deceptive trade practices in the course of its business, in violation of Colo. Rev. Stat. § 6-1-105(1), including:

    a. Making a false representation as to the characteristics of products and services;

    b. Representing that their services are of a particular standard, quality, or grade, though Defendants knew or should have known that there were or another;

    c. Advertising services with intent not to sell them as advertised; and

    d. Failing to disclose material information concerning their services which was known at the time of an advertisement or sale when the failure to disclose the information was intended to induce the consumer to enter into the transaction.

183.    Defendants' deceptive trade practices include:

    a. Representing that the Honey browser extension finds consumers the best deals when it does not;

    b. Omitting the material fact that they prioritize discount codes from partner merchants over better deals existing in the market;

    c. Prioritizing its own profits and those of its merchant partners over providing genuine value to its consumers;

    d. Knowingly, recklessly, and/or intentionally advertising the Honey browser extension with intent not to work as advertised; and

f.  Omitting, suppressing, and concealing the material fact that it did not disclose the best deals available on the internet to the consumers.

184.  Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the Honey browser extension's ability to disclose the best deals to consumers when it does not.

185.  Defendants intended to mislead Plaintiff Brackney and Colorado Subclass Members and induce them to rely on their misrepresentations and omissions.

186.  Had Defendants disclosed to Plaintiff Brackney their unlawful representations and omissions relating to the Honey browser extension, Plaintiff Brackney would not have installed the Honey browser extension or would have searched for coupon codes on his own.   Accordingly, Plaintiff Brackney acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which he could not have discovered.

187.  Defendants acted intentionally, knowingly, and maliciously to violate Colorado's Consumer Protection Act, and recklessly disregarded Plaintiff Brackney's and Colorado Subclass Members' rights. The NAD's investigation of Defendants' representations relating to the Honey browser extension put Defendants on notice that their representations are likely to deceive consumers.

188.  As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff Brackney and Colorado Subclass Members suffered injuries to their legally protected interests, including their legally protected interest, monetary and non-monetary damages, as described herein, including but not limited to restitution to recover all monies which were acquired through Defendants' acts of fraudulent, unfair or unlawful competition.

189.  Defendants' deceptive trade practices significantly impact the public, because many members of the public are actual or potential consumers of Defendants' services and millions of users have used the Honey browser extension for their online purchases, which includes Plaintiff Brackney.

190.     Plaintiff Brackney seeks all monetary and non-monetary relief allowed by law, including the greater of: (a) actual damages, or (b) $500, or (c) three times actual damages; injunctive relief; and reasonable attorneys' fees and costs.

**COUNT XII**
**DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT**
**D.C. Code §§ 28-3904, *et seq.***
**(On Behalf of Plaintiff Roskind and D.C. Subclass Members)**

191.     Plaintiff Roskind incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

192.     Defendants are each a "person" as defined by D.C. Code § 28-3901(a)(1).

193.     Defendants are each a "merchant" as defined by D.C. Code § 28-3901(a)(3).

194.     Plaintiff Roskind is a "consumer" who purchased or received goods or services for personal, household, or family purposes, as defined by D.C. Code § 28-3901(a)(3).

195.     Defendants advertised, offered, or sold goods or services in the District of Columbia and engaged in trade or commerce directly or indirectly affecting the people of the District of Columbia.

196.     Defendants engaged in unfair, unlawful, and deceptive trade practices, misrepresentations, and the concealment, suppression, and omission of material facts with respect to the sale and advertisement of goods and services in violation of D.C. Code § 28-3904, including:

    a.   Representing that goods or services have characteristics or benefits that they do not have;

    b.   Representing that goods or services are of a particular standard, quality, grade, style, or model, if they are of another;

    c.   Misrepresenting as to a material fact which has a tendency to mislead;

    d.   Failing to state a material fact if such failure tends to mislead;

    e.   Advertising or offering goods or services without the intent to sell them or without the intent to sell them as advertised or offered; and

    f.   Violating D.C. Code §§ 28-3852 and D.C. Code Ann. 28-3852a.

197.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the ability of the Honey browser extension to find consumers the best deals and coupon codes, when it does not.

198.    Defendants intended to mislead Plaintiff Roskind and D.C. Subclass Members and induce them to rely on their misrepresentations and omissions.

199.    The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Roskind and D.C. Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

200.    Defendants acted intentionally, knowingly, and maliciously to violate the District of Columbia's Consumer Protection Procedures Act, and recklessly disregarded Plaintiff Roskind's and D.C. Subclass Members' rights. The NAD's investigation of Defendants' representations relating to the Honey browser extension put Defendants on notice that their representations are likely to deceive consumers.

201.    As a direct and proximate result of Defendants' unfair, unlawful, and deceptive trade practices, Plaintiff Roskind and D.C. Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to restitution to Plaintiff Roskind and D.C. Subclass Members to recover all monies which were acquired through Defendants' acts of fraudulent, unfair or unlawful competition.

202.    Plaintiff Roskind seeks all monetary and non-monetary relief allowed by law, including actual damages, restitution, injunctive relief, punitive damages, attorneys' fees and costs, the greater of treble damages or $1500 per violation, and any other relief that the Court deems proper.

1

2

3

**COUNT XIII**
**INDIANA DECEPTIVE CONSUMER SALES ACT**
**Ind. Code §§ 24-5-0.5-1, *et seq.***
**(On Behalf of Plaintiff Leturgez and Indiana Subclass Members)**

4

5

203. Plaintiff Leturgez incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

6

204. Defendants are each a "person" as defined by Ind. Code § 24-5-0.5-2(a)(2).

7

8

9

205. Defendants are each a "supplier" as defined by § 24-5-0.5-2(a)(3), because it regularly engages in or solicits "consumer transactions," within the meaning of § 24-5-0.5-2(a)(1).

10

11

206. Defendants engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violation of Ind. Code § 24-5-0.5-3(a).

12

13

207. Defendants' representations and omissions include both implicit and explicit representations, including:

14

15

208. Representing that the Honey browser extension finds consumers the best deals when it does not;

16

17

209. Omitting the material fact that Defendants prioritize discount codes from merchant partners over better deals existing in the market;

18

19

210. Prioritizing their own profits and those of their merchant partners over providing genuine value to their consumers;

20

21

211. Knowingly, recklessly, and/or intentionally advertising the Honey browser extension with intent not to work as advertised; and

22

23

212. Omitting, suppressing, and concealing the material fact that they did not disclose the best deals available on the internet to consumers.

24

25

26

213. Defendants' acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.

27

28

214. The injury to consumers from Defendants' conduct was, and is, substantial because it was neither trivial nor speculative; it involved both monetary and non-monetary injury.

The injury to consumers was substantial not only due to the extensive and unprecedented number of affected individuals but also because of the significant harm inflicted on each consumer.

215.    Consumers could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information about the inadequacy of the Honey browser extension, Defendants created an asymmetry of information between them and consumers that precluded consumers from taking action to avoid or mitigate injury.

216.    Defendants' misrepresentations and omissions had no countervailing benefit to consumers or to competition.

217.    Defendants' acts and practices were "abusive" for numerous reasons, including:

218.    Defendants materially interfered with consumers' ability to understand a term or condition in a consumer transaction. Defendants' failure to disclose the prioritization of partner merchants' deals interfered with consumers' decision-making in a variety of their transactions;

219.    Defendants took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction. Without knowing about the inadequacies of the Honey browser extension with respect to finding the best deals and best discounts, consumers lacked an understanding of the material risks and costs of a variety of their transactions;

220.    Defendants took unreasonable advantage of consumers' inability to protect their own interests. Consumers could not protect their interests due to the asymmetry in information between them and Defendants concerning the functionality of the Honey browser extension; and

221.    Defendants took unreasonable advantage of consumers' reasonable reliance that the Honey browser extension was finding the best deals for them on the internet. Consumers' reliance was reasonable for the reasons discussed below.

222.    Defendants also engaged in "deceptive" acts and practices in violation of Indiana Code § 24-5-0.5-3(a) and § 24-5-0.5-3(b), including:

a.  Misrepresenting that the subject of a consumer transaction has performance, characteristics, or benefits it does not have which the supplier knows or should reasonably know it does not have; and

b.  Misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model if it is not and if the supplier knows or should reasonably know that it is not; and

c.  Defendants intended to mislead Plaintiff Leturgez and Indiana Subclass Members and induced them to rely on their misrepresentations and omissions.

223.    Had Defendants disclosed to Plaintiff Leturgez their unlawful representations and omissions relating to the Honey browser extension, Plaintiff Leturgez would not have installed the Honey browser extension or would have searched for coupon codes on his own.   Accordingly, Plaintiff Leturgez acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which he could not have discovered.

224.    Defendants had a duty to disclose these facts due to the circumstances of this case, and the generally accepted professional standards. Such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiff Leturgez, and Defendants, because consumers placed trust and confidence in Defendants to save them money as they advertised. Defendants' duty to disclose also arose from their:

a.  Possession of exclusive knowledge of consumers regarding the Honey browser extension;

b.  Active concealment of Defendants' practice of prioritizing partner merchants' codes; and/or

c.  Incomplete representations about how Defendants programmed the Honey browser extension to work.

225.    Defendants acted intentionally, knowingly, and maliciously to violate Indiana's Deceptive Consumer Sales Act, and recklessly disregarded Plaintiff Leturgez's and Indiana Subclass Members' rights. The NAD's investigation of Defendants' representations relating to

the Honey browser extension put Defendants on notice that their representations are likely to deceive consumers.

226.    Despite receiving notice, Defendants have not cured their unfair, abusive, and deceptive acts and practices.

227.    Defendants' conduct includes incurable deceptive acts that Defendants engaged in as part of a scheme, artifice, or device with intent to defraud or mislead, under Ind. Code § 24-5-0.5-2(a)(8).

228.    As a direct and proximate result of Defendants' uncured or incurable unfair, abusive, and deceptive acts or practices, Plaintiff Leturgez and Indiana Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to restitution to Plaintiff Leturgez and Indiana Subclass Members to recover all monies which were acquired through Defendants' acts of fraudulent, unfair or unlawful competition.

229.    Defendants' violations present a continuing risk to Plaintiff Leturgez and the Indiana Subclass, as well as to the general public.

230.    Plaintiff Leturgez and the Indiana Subclass seek all monetary and non-monetary relief allowed by law, including the greater of actual damages or $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief; and punitive damages.

## COUNT XIV
### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
#### Fla. Stat. §§ 501.201, *et seq.*
#### (On Behalf of Plaintiff Cruz and Florida Subclass Members)

231.    Plaintiff Cruz incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

232.    Plaintiff Cruz is a "consumer" as defined by Fla. Stat. § 501.203.

233.    Defendants advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

234.  Defendants engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), including:

    a.  Representing that the Honey browser extension finds consumers the best deals when it does not;

    b.  Omitting the material fact that they prioritize discount codes from partner merchants over better deals existing in the market;

    c.  Prioritizing their own profits and those of their merchant partners over providing genuine value to its consumers;

    d.  Knowingly, recklessly, and/or intentionally advertising the Honey browser extension with intent not to work as advertised; and

    e.  Omitting, suppressing, and concealing the material fact that they did not disclose the best deals available on the internet to consumers.

235.  Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the ability of the Honey browser extension to find consumers the best deals and discounts.

236.  Had Defendants disclosed to Plaintiff Cruz their unlawful representations and omissions relating to the Honey browser extension, Plaintiff Cruz would not have installed the Honey browser extension or would have searched for coupon codes on his own.  Accordingly, Plaintiff Cruz acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which she could not have discovered.

237.  As a direct and proximate result of Defendants unconscionable, unfair, and deceptive acts and practices, Plaintiff Cruz and Florida Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to restitution to Plaintiff Cruz and Florida Subclass Members to recover all monies which were acquired through Defendants' acts of fraudulent, unfair or unlawful competition.

238.  Plaintiff Cruz seeks all monetary and non-monetary relief allowed by law, including actual damages under Fla. Stat. § 501.211; declaratory and injunctive relief; reasonable

attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

## COUNT XV
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiffs and All Class Members)

239.    Plaintiffs re-allege and incorporate by reference herein all of the allegations set forth above.

240.    Every contract is governed by the implied covenant of good faith and fair dealing that prevents a contracting party from depriving other contracting parties from the expended benefits accruing under the contract.

241.    Plaintiffs and other Class Members downloaded the Honey browser extension.

242.    PayPal withheld discount codes when Plaintiffs and other Class Members utilized the Honey browser extension.

243.    PayPal generates revenue from the sale of each item purchased by consumers utilizing the Honey browser extension.

244.    PayPal engaged in conduct that frustrated and interfered with the rights of Plaintiffs and other Class Members and these actions prevent Plaintiffs and the Class from receiving the benefits of their bargain.

245.    As a direct and proximate result of PayPal's breach of the covenant of good faith and fair dealing, PayPal caused harm to Plaintiffs and Class Members. To redress such harm, Plaintiffs seek injunctive relief under this Count and an order enjoining the acts and practices alleged unlawful herein.

## COUNT XVI
### FRAUDULENT MISREPRESENTATION
### (On Behalf of Plaintiffs and All Class Members)

246.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

247.    Defendants made numerous misrepresentations of material facts to Plaintiffs and Class Members, including but not limited to:

    a.    "Honey finds you the Internet's best discount codes;"

b. "We search for the internet's best coupons;"

c. "Honey will find every working promo code on the internet;" and

d. "With one click, Honey will apply the best deal to your cart."

248. Defendants had knowledge of their misrepresentations at the time.

249. Defendants made such misrepresentations with the intention of inducing confidence and driving consumers to use the Honey browser extension as their sole source for discounts and coupon codes for their online purchases.

250. Defendants intended that Plaintiffs and Class Members would act upon their misrepresentations by either deciding as a new user to use Honey or deciding as an existing user to continue using Honey.

251. Plaintiffs and Class Members were unaware of the falsity of the misrepresentations made by Defendants.

252. Defendants' misrepresentations induced Plaintiffs and Class Members to use Honey.

253. Plaintiffs and Class Members actually relied on Defendants' misrepresentations and omissions in deciding to use Honey and in deciding not to search for additional discount codes or coupons available for online purchase.

254. But for Defendants' fraudulent misrepresentations, Plaintiffs would not have used Honey exclusively and, instead, would have either not used Honey or would have searched for additional discount codes or coupons available for online purchases.

255. Plaintiffs' and Class Members' reliance on Defendants' misrepresentations was reasonable.

256. Plaintiffs' and Class Members' reliance on Defendants' misrepresentations resulted in damage to Plaintiffs and Class Members, including but not limited to being wrongfully deprived of monies they otherwise would have saved by using other methods to search for and find better coupon codes.

257. Defendants are therefore jointly and severally liable for Plaintiffs' injuries.

## COUNT XVII
## FRAUDULENT CONCEALMENT
### (On Behalf of Plaintiffs and All Class Members)

258. Plaintiffs incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

259. Defendants concealed from Plaintiffs and Class Members material facts, including that Honey prioritizes coupon codes from partner merchants over better deals that exist elsewhere on the marketplace and, in some cases, excludes non-partner coupons from its searches.

260. Defendants had knowledge of the concealment of such material facts.

261. Plaintiffs and Class Members were unaware of the falsity of the omissions and concealment of material facts made by Defendants.

262. Defendants concealed such material facts with the intention of inducing confidence and driving consumers to use Honey.

263. Defendants intended that Plaintiffs and Class Members would act upon their omissions by either deciding as a new user to use Honey or deciding as an existing user to continue using Honey.

264. Plaintiffs and Class Members actually relied on Defendants' misrepresentations and omission in deciding to use Honey and in deciding not to search for additional discount codes or coupons available for online purchase.

265. But for Defendants' omissions, Plaintiffs would not have used Honey exclusively and, instead, would have either not used Honey or would have searched for additional discount codes or coupons available for online purchases.

266. Plaintiffs' and Class Members' reliance on Defendants' misrepresentations and omissions was reasonable.

267. Defendants' concealment resulted in damage to Plaintiffs and Class Members, including but not limited to being wrongfully deprived of monies they otherwise would have saved by using other methods to search for and find better coupon codes.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

(a)     For an order certifying the Classes as defined, herein, and appointing Plaintiffs and their Counsel to represent the Classes;

(b)     For an order declaring that Defendants' conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)     For permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

(e)     For an award of actual, statutory, treble, punitive, and consequential damages, in an amount to be determined at trial;

(f)     For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

(g)     For an award of pre-judgment and post-judgment interest as allowed by law;

(h)     For an award of costs of suit and attorneys' fees, as allowed by law; and

(i)     Such other and further relief as this Court may deem just and proper.


*[INTENTIONALLY BLANK – CONTINUES ON NEXT PAGE]*

CLASS ACTION COMPLAINT

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand a trial by jury of all issues so triable.

Dated: April 1, 2025                           Respectfully submitted,

By: <u>/s/ Adam M. Apton</u>
     Adam M. Apton (SBN 316506)
     **LEVI & KORSINSKY, LLP**
     1160 Battery Street, East Suite 100
     San Francisco, CA 1671
     Tel: (415) 373-2420
     Email: aapton@zlk.com

     Courtney E. Maccarone*
     Alyssa Tolentino*
     **LEVI & KORSINSKY, LLP**
     33 Whitehall Street, 17th Floor
     New York, NY 10004
     Telephone: (212) 363-7500
     Facsimile: (212) 363-7171
     Email: cmaccarone@zlk.com
     Email: atolentino@zlk.com

     *Counsel for Plaintiffs*

     *\*pro hac vice* forthcoming

CLASS ACTION COMPLAINT